# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. _____

**KYLE A. FISHER**

      Plaintiff,

v.

**CITY OF FOUNTAIN**, a Colorado municipality,
**MARCUS HOWARD,** Fountain Police Officer, in his individual capacity,
**JONATHAN KAY,** Fountain Police Officer, in his individual capacity,
**BRANDON ANDERSON,** Fountain Police Officer, in his individual capacity, and
**CHRIS HEBERER**, Fountain Police Chief, in his individual capacity,

      Defendants.

---

## COMPLAINT AND JURY DEMAND

---

Plaintiff Kyle A. Fisher, by and through his attorney, Taylor G. Minshall, of RELEVANT LAW – COLORADO SPRINGS, respectfully alleges for his Complaint and Jury Demand as follows:

### I.  INTRODUCTION

1.  This is an action for damages and other relief against the Defendants pursuant to 42 U.S.C. § 1983 and § 13-21-131, C.R.S. for violations of Plaintiff's civil constitutional rights to be free of excessive force, unlawful search, and unlawful seizure.

2.  Plaintiff, an African-American man in a protected class, alleges that on October 1, 2022, Defendants violated his constitutionally protected civil rights when, intentionally, knowingly, recklessly, and with deliberate indifference to his constitutional rights, Defendants Howard and Kay forcibly entered Plaintiff's home without permission, a search warrant, probable cause, or any lawful basis, and unlawfully seized Plaintiff with excessive force, drug him out of his home like

an animal, and then subdued, restrained, and detained him in a police vehicle. Plaintiff additionally alleges that while he was unlawfully detained, Defendants Howard, Kay, and Anderson then subjected Plaintiff and his two young daughters to an intrusive, unjustified, and illegal search of their home without permission, a search warrant, probable cause, or any lawful basis.

3.  Defendants' conduct under color of state law proximately caused the deprivation of Plaintiff's constitutionally protected rights.

4.  Plaintiff has served notice of his claims in compliance with Colo. Rev. Stat § 24-10-109.

## II.      JURISDICTION & VENUE

5.  The federal claims in this action arise under the Constitution and laws of the United States and are brought pursuant to 42 U.S.C. § 1983. The state claims in this action arise under the Constitution of the State of Colorado and are brought pursuant to section 13-21-131 of the Colorado Revised Statutes.

6.  Jurisdiction is conferred on this Court pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331, 1343 and 2201.

7.  Jurisdiction supporting Plaintiff's claim for attorney fees and costs is conferred by 42 U.S.C. § 1988 and § 13-21-131(3), C.R.S.

8.  Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b).  All of the events alleged herein occurred within the State of Colorado, and all of the parties are residents of the State of Colorado.

## III.      PARTIES

9.  Plaintiff Kyle A. Fisher is a citizen of the United States of America and a resident of the State Colorado.

10.    Defendant City of Fountain, at all times relevant to this Complaint, operated the Fountain Police Department ("FPD"), a law enforcement agency, and is a municipality capable of being sued under Colorado law. The city is the legal entity responsible for the FPD. Plaintiff bases all applicable and appropriate claims as to Defendant City of Fountain and the FPD on the doctrines of respondeat superior or vicarious liability, and municipal liability pursuant to *Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658 (1978).

11.    Defendant Marcus Howard is a natural person and was at all times relevant to this Complaint duly appointed and sworn as a police officer for the City of Fountain in Fountain, Colorado.  At all times relevant hereto, Defendant Howard was a "peace officer" under § 24-31-901(3), C.R.S., and acting under color of law and within his scope of employment as a FPD officer, including when his actions were in violation of the Constitution and laws of the State of Colorado and the Constitution and laws of the United States of America. Officer Howard is a named Defendant in his individual capacity.

12.    Defendant Jonathan Kay is a natural person and was at all times relevant to this Complaint duly appointed and sworn as a police officer for the City of Fountain in Fountain, Colorado. At all times relevant hereto, Defendant Kay was a "peace officer" under § 24-31- 901(3), C.R.S., and acting under color of law and within his scope of employment as a FPD officer, including when his actions were in violation of the Constitution and laws of the State of Colorado and the Constitution and laws of the United States of America. Officer Kay is a named Defendant in his individual capacity.

13.    Defendant Brandon Anderson is a natural person and was at all times relevant to this Complaint duly appointed and sworn as a police officer for the City of Fountain in Fountain, Colorado. At all times relevant hereto, Defendant Anderson was a "peace officer" under § 24-31-

3

901(3), C.R.S., and acting under color of law and within his scope of employment as a FPD officer, including when his actions were in violation of the Constitution and laws of the State of Colorado and the Constitution and laws of the United States of America. Officer Anderson is a named Defendant in his individual capacity.

14. Defendant Chief Chris Heberer is a natural person and was at all times relevant to this Complaint duly appointed and sworn as a Chief police officer for the City of Fountain in Fountain, Colorado. At all times relevant hereto, Defendant Chief Heberer was a "peace officer" under § 24-31- 901(3), C.R.S., and acting under color of law and within his scope of employment as FPD Chief, including when his actions were in violation of the Constitution and laws of the State of Colorado and the Constitution and laws of the United States of America. Chief Heberer is a named Defendant in his individual capacity.

## IV.    FACTUAL ALLEGATIONS

***Plaintiff's ex-wife's history of misuse and abuse of FPD welfare checks leading up to the subject events on October 1, 2022.***

15. Leading up to the subject events on October 1, 2022, Mr. Fisher and his ex-wife, Shaunay Hunter, were co-parenting their young daughter pursuant to a custody order.

16. Ms. Hunter had a history of misusing and abusing welfare checks by the FPD to harass Mr. Fisher, as reflected in the Incident Detail reports spanning August 18, 2022 through September 4, 2022 (attached hereto as "**Exhibit 1 to Complaint**").

17. On August 18, 2022, Ms. Hunter contacted the FPD and requested a welfare check for she and Mr. Fisher's young daughter at Mr. Fisher's residence located at 1295 Ancestra Drive Fountain, Colorado 80817. FPD responded, arrived at Mr. Fisher's residence, and informed him that the purpose for their visit was to confirm the welfare of his oldest daughter at Ms. Hunter's

request. Mr. Fisher invited the responding FPD officer inside of his home and the officer confirmed that the child was safe.

18.  On August 24, 2022, Ms. Hunter again contacted the FPD and requested a welfare check for she and Mr. Fisher's young daughter at Mr. Fisher's residence. Officer Howard responded, arrived at Mr. Fisher's residence, and informed him that the purpose for his visit was to confirm the welfare of his oldest daughter at Ms. Hunter's request. Mr. Fisher invited Mr. Howard inside of his home and Officer Howard confirmed that the child was safe.

19.  At that time, Mr. Fisher shared with Officer Howard his concern that Ms. Hunter had requested multiple welfare checks in the past several weeks, which FPD responded to, and Mr. Fisher cooperatively complied with each time. Mr. Fisher further stated that he is a social worker and works from home and the frequent welfare checks are hindering his work and could potentially adversely impact his employment. Mr. Fisher requested that FPD supervisor approval be required for any further welfare check requests by Ms. Hunter.  *See* **Ex. 1** at 7.

20.  On August 24, 2022, a supervisor level officer with the initials "KEB" granted Mr. Fisher's request and entered a caution note in the FPD's report system stating that any welfare check requests called in by Ms. Hunter for she and Mr. Fisher's young daughter must be approved by a supervisor unless there are extenuating circumstances.  *Id.* at 15.

21.  On August 27, 2022, Ms. Hunter again contacted the FPD and requested a welfare check for she and Mr. Fisher's young daughter at Mr. Fisher's residence. This time, FPD did not respond due to the caution Note by KEB entered on August 24, 2022. FPD informed Ms. Hunter of the same.

22.  On September 4, 2022, Ms. Hunter again contacted the FPD and requested a welfare check for she and Mr. Fisher's young daughter at Mr. Fisher's residence. Again, FPD did not

respond due to the caution Note by KEB entered on August 24, 2022. Further, Officer Nicole

Carpenter explained to Ms. Hunter that "she could be facing harassment charges if she continues

to call in [welfare check requests at Mr. Fisher's residence] without a viable reason, as she calls in

every week." *Id.* at 54.

***Defendant Howard's and Defendant Kay's forced entry into Plaintiff's home and seizure of Plaintiff on October 1, 2022 violated his constitutional rights to be free of excessive force, unreasonable search and seizure, and unlawful detention.***

23.  On October 1, 2022, upon information and belief, a neighbor of Mr. Fisher, Alyssa

Bila, called FPD and requested a welfare check due to a child that was allegedly crying and/or

screaming from Mr. Fisher's home. Mr. Fisher and his daughters are the only African-Americans

living on their street, and Ms. Bila has had a demonstrable history of racist animus against Mr.

Fisher.

24.  Officers Howard and Kay responded and approached the front porch of Mr. Fisher's

residence at 9:08 p.m. The bodycam video and audio recording for Officer Kay (attached hereto

as "**Exhibit 2 to Complaint**") shows that it was a quiet and calm evening, with the sound of

crickets chirping and absolutely no sounds of crying or screaming.

25.  Officers Howard and Kay stood on the front porch of Mr. Fisher's residence and noted

that the front door was left open and the outside glass security door was closed.

26.  Officer Howard knocked and Mr. Fisher answered and opened the outer glass security

door. At no time was there any sound of a crying or screaming child.

27.  At that time, Mr. Fisher was understandably upset, as he recognized Officer Howard

from prior welfare checks and learned that the officers were there for yet another welfare check

for his daughter with Ms. Hunter.  At no time did Officers Howard and Kay inform Mr. Fisher that

they obtained supervisor approval for their welfare check that evening.

6

28.  Mr. Fisher was frustrated as he assumed that this welfare check was another request by Ms. Hunter, and FPD had previously assured him that there would be no more welfare checks for his toddler daughter without FPD supervisor approval, due to Ms. Hunter's misuse of the FPD welfare check process to harass him. Accordingly, Mr. Fisher assumed that officers Howard and Kay did not have supervisor approval for this welfare check.

29.  Mr. Fisher was also already irritable because it was late in the evening and he was exhausted after trying to put his infant and toddler daughters to sleep for the past few hours. Mr. Fisher had just put his daughters to sleep soon before the officers arrived and knocked at his door.

30.  Mr. Fisher was visibly frustrated, irritable, and stressed as he communicated to officer Howard that he is a single parent; he lives at his home alone with his two daughters and was taking care of them; and whoever called in the welfare request (Mr. Fisher assumed this person to be Ms. Hunter) could leave him alone. Mr. Fisher then shut both doors and walked away.

31.  Officer Howard then turned to officer Kay and stated, "No, dude. I'm not gonna put up with that."

32.  Officer Howard was visibly angry as he banged on the glass security door very loudly and yelled for Mr. Fisher.  Mr. Fisher, concerned that officer Howard's loud banging on the door and yelling would wake up his daughters, opened the outer glass security door to tell officer Howard to stop banging on the door, as the glass security door swung open, extending outwards towards the officers.

33.  Mr. Fisher then leaned forward from inside his home to try and grasp the inside handle of the glass security door, which had unexpectedly swung out of his reach, so that Mr. Fisher could close the door.

34.  However, officer Howard realized that Mr. Fisher was reaching for the inside handle of the glass security door to close the door, so officer Howard quickly shifted his body and stepped right to block and prevent the glass security door from swinging back to Mr. Fisher's hand to where he could close the door. Officer Howard then extended his right arm and pushed outward onto the glass security door, preventing it from swinging shut or closing as he positioned his body to hold the door open.

35.  Mr. Fisher saw that officer Howard was using his body to hold open the glass security door, preventing Mr. Fisher from closing the door.

36.  Officer Howard then yelled that he needed to see Mr. Fisher's daughter.

37.  Mr. Fisher, perceiving that officer Howard was attempting to forcibly gain entry into his home, replied that officer Howard needs to get out of his house, that officers Howard and Kay do not have permission to be in his house, and that he is taking care of his children who are sleeping.

38.  Mr. Fisher then stepped back from the threshold of the doorway to disengage with officer Howard and close his front door.

39.   Before Mr. Fisher could close his front door, officer Howard stated, "You know what..." and then abruptly and violently lunged for Mr. Fisher as officer Howard took steps forward and moved his entire body past the threshold of the front door and into Mr. Fisher's house.

40.  Officer Howard extended both of his arms towards Mr. Fisher and grabbed the back of Mr. Fisher's neck with his right hand and then Mr. Fisher's right bicep with his left hand.

41.  While officer Howard was completely inside of Mr. Fisher's home and attempting to drag Mr. Fisher out of his own home, officer Kay took steps towards the entry way, extended his

right arm and used his right hand to catch the glass security door to prevent the door from closing

on officer Howard as he was inside of Mr. Fisher's home.

42.  Officer Kay then extended his left arm and reached into Mr. Fisher's home, crossing

the threshold of the front door, and grabbed Mr. Fisher's right bicep as officer Kay then stepped

forward to use his body to keep the outer glass security door open, and then with his right hand he

grabbed Kyle's right hand and pulled with force to assist officer Howard with pulling Kyle out of

his home and onto the front porch.

43.  Officers Howard and Kay restrained Mr. Fisher in handcuffs on his front porch and

then walked him to an FPD vehicle parked in front of Mr. Fisher's home, where they locked and

detained him for approximately thirty minutes.

***Defendant Howard's, Kay's, and Anderson's search of Plaintiff's home on October 1, 2022, without Plaintiff's permission, probable cause, or a search warrant, violated Plaintiff's constitutional rights to be free of unreasonable searches in his home.***

44.  While Mr. Fisher was detained in the FPD vehicle, officers Howard, Kay, and

Andersen entered Mr. Fisher's home, and officers Howard and Kay searched the entire home.

None of these officers had Mr. Fisher's permission to enter the home, a search warrant, or probable

cause.

45.  Officer Kay's bodycam recording shows that he and officer Howard walked into an

upstairs bedroom to find Mr. Fisher's young toddler daughter sitting up and crying in bed next to

her crying infant sister - both terrified at the sight of the unfamiliar officers and their blinding

flashlights - and after the girls abruptly awoke to the frightening sounds of officers Howard and

Kay forcing their way into the family's home and violently pulling their father out of their home,

locking him in handcuffs, and detaining him in the FPD vehicle. While Mr. Fisher was detained in

9

the FPD squad car, he could hear his daughters screaming while the officers searched their home, which caused him severe emotional distress.

46.   After about thirty minutes, Mr. Fisher was finally released out of the FPD vehicle, released from the handcuff restraints, and then issued a summons and citation for obstructing a police officer.

47.   Moments after the violent and traumatic encounter with FPD that night, Mr. Fisher felt severe neck pain and took photos of his resulting injuries (attached hereto as "**Exhibit 3 to Complaint**"), which show significant bruising on the back lower right side of his neck—precisely where officer Howard placed his right hand on Mr. Fisher as he dragged him out of his home.

48.   On October 3, 2022, after a day of excruciating neck pain resulting from officers Howard's and Kay's violent assault, Mr. Fisher went to UC Health for treatment, as his neck pain was so severe that he was unable to even carry his daughters.

49.   Mr. Fisher was diagnosed with cervical strain, as reflected in the medical record attached hereto as "**Exhibit 4 to Complaint**" (redacted to protect Mr. Fisher's personal medical information), resulting from officers Howard's and Kay's excessive force and assault and battery on October 1, 2022.

50.   As a result of the excessive force and unlawful search and seizure to which he was subjected by the individual Defendants, all of whom are Caucasian, Mr. Fisher, as an African-American, felt violated, degraded, and dehumanized. Officers Howard and Kay unlawfully entered his home and violently attacked Mr. Fisher and dragged him out of his home while his daughters were sleeping, without any justifiable legal cause, and then detained him in a squad car as they searched his home. Mr. Fisher has suffered and continues to suffer extreme emotional distress after his trauma, and fears that he could experience similar arbitrary and unjustifiable attacks by the

10

FPD and Defendant individuals in the future. Plaintiff continues to live and work in the Fountain community. He is also concerned that FPD will target him in retaliation because he reported the incident and has now commenced this lawsuit.

51.  Mr. Fisher subsequently requested from the FPD the available officer bodycam footage during the FPD's encounter with him on the evening of October 1, 2022.

52.  On October 4, 2022, Lt. Gilbertsen of the FPD sent an email message to Mr. Fisher (attached hereto as "**Exhibit 5 to Complaint**"), advising that after the FPD processed his request for bodycam footage of the incident, the Command Staff discussed the incident, and the Chief of Police initiated an internal (administrative) investigation to be led by Lt. Gilbertsen; the obstruction charge against Mr. Fisher will be dropped and the summons quashed.

53.  On or about October 5, 2022, Lt. Gilbertsen of the FPD visited Mr. Fisher at his residence to personally follow up with him.  Lt. Gilbertsen reaffirmed to Mr. Fisher that after an internal investigation, the obstruction charge against Mr. Fisher was dropped and the summons he was issued was quashed.

## V. STATEMENT OF CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
*Unreasonable Seizure and Excessive Force Violations under 42 U.S.C. § 1983; Colo. Rev. Stat. § 13-21-131; and Colo. Const. Art. II, Section 7.*
**(against Defendants Howard and Kay)**

54.  Plaintiff hereby incorporates all other paragraphs of this Complaint, and the content of any and all exhibits attached hereto, as if fully set forth herein.

55.  At all times relevant to the subject matter of this Complaint, the actions of Defendants Howard and Kay, as described herein, while acting under color of state law and within the scope of their employment as FPD officers, intentionally deprived Plaintiff of the securities, rights, privileges, liberties, and immunities secured by the Constitution of the United States of America

and the Constitution of the State of Colorado, including his right to freedom from unlawful seizure and excess force as guaranteed by the Fourth Amendment to the Constitution of the United States of America and 42 U.S.C. §1983, and as guaranteed by Article II § 7 of the Colorado Constitution, in that the Defendants intentionally, knowingly, and recklessly forced their entry into Mr. Fisher's home, and excessively subdued, restrained, and detained Mr. Fisher, without any reasonable justification, search warrant, or probable cause.

56.    When Defendant Howard suddenly and without warning entered into Mr. Fisher's home and physically attacked Mr. Fisher by – among other things – grabbing him by the back of his neck and by his arm and forcibly dragged Mr. Fisher out of his home like an animal, as set forth in the paragraphs above, this was an assault upon Mr. Fisher's person, employing excessive force, in violation of the Fourth Amendment.

57.    No officer (besides those employed at FPD) would consider Defendant Howard's sudden, unannounced and forcible entry into Mr. Fisher's home and deployment of painful force upon Mr. Fisher to have been reasonable or justified under the circumstances.

58. Defendant Kay had both the duty and ample opportunity to intervene to stop Defendant Howard's violence upon Mr. Fisher but chose instead to materially assist Howard by entering Mr. Fisher's home and then forcibly dragging Mr. Fisher out of his home and detaining him.

59. The Fourth Amendment forbids unreasonable seizures, which includes seizures carried out with excessive force, like this one.

60. Defendants Howard and Kay unreasonably and unconstitutionally seized Mr. Fisher from his home and used excessive force in light of the totality of the circumstances, including but not limited to:

a. Mr. Fisher was in his home and posed no physical threat to anyone, anywhere;

b. Mr. Fisher was wearing a tight-fitting tank top and shorts, making the possibility that he had a hidden weapon practically zero;

c. Mr. Fisher was not attempting to flee from a crime;

d. The officers' failed to inform Mr. Fisher that they had supervisor approval for their welfare check, given the prior history of excessive welfare checks for Mr. Fisher's child with Ms. Hunter and Mr. Fisher's understanding that supervisor approval was required for all such welfare checks;

e. The officers did not yet have any evidence corroborating the neighbor's claim that Mr. Fisher's children were crying and/or screaming (and all that they had seen so far contradicted the claim) and so did not yet have any reasonable basis to believe that Mr. Fisher's children were in any danger to justify a welfare check; and

f. Mr. Fisher was in his home, which is afforded additional protections from the entry and trespass of law enforcement.

61. Mr. Fisher's right to be free from unreasonable seizure in his own home and excessive force as described herein was clearly established at the time the Defendant officers attacked him inside of his home, dragged him out of his home as if he were a wild animal, and then subdued, detained, and paraded him around in front of his home, before the neighborhood.

62. Defendants Howard and Kay effected their assaults and injuries to Mr. Fisher with deliberate indifference to his rights under the Fourth Amendment to the U.S. Constitution and Article II § 7 of the Colorado Constitution.

63. Defendant Howard's and Kay's sudden seizure and violent assault upon Mr. Fisher, in the safety of his own home, caused him to experience great physical pain, injury, and terror. The

13

experience of this event caused and continues to cause Mr. Fisher trauma and emotional distress, as the Caucasian Defendant officers suddenly and abruptly stole from Mr. Fisher his most prized possession as an African American man in today's systemically racist society: his humanity.

64. As a direct and proximate result of the actions and omissions of Defendants Howard and Kay, Plaintiff has suffered damages in an amount in excess of $100,000.00.

## SECOND CLAIM FOR RELIEF
### *Unreasonable Search Violations under 42 U.S.C. § 1983; Colo. Rev. Stat. § 13-21-131; and Colo. Const. Art. II, Section 7.*
### (against Defendants Howard, Kay and Anderson)

65. Plaintiff hereby incorporates all other paragraphs of this Complaint, and the content of any and all exhibits attached hereto, as if fully set forth herein.

66. At all times relevant to the subject matter of this Complaint, the actions of Defendants Howard, Kay, and Anderson, as described herein, while acting under color of state law and within the scope of their employment as FPD officers, intentionally deprived Plaintiff of the securities, rights, privileges, liberties, and immunities secured by the Constitution of the United States of America and the Constitution of the State of Colorado, including his right to freedom from unlawful search as guaranteed by the Fourth Amendment to the Constitution of the United States of America and 42 U.S.C. §1983, and as guaranteed by Article II § 7 of the Colorado Constitution, in that the Defendants had no probable cause, search warrant, or reasonable suspicion to believe that Mr. Fisher's sleeping children were in danger or that Mr. Fisher had committed any violation of the law prior to entering and searching Mr. Fisher's home while he was unlawfully detained.

67. Defendants Howard and Kay deliberately and improperly accosted Mr. Fisher, and then with Defendant Anderson, the three officers intentionally, knowingly, and recklessly

conducted an illegal, demeaning, and invasive search throughout Mr. Fisher's home without probable cause, a search warrant, or any reasonable justification.

68.  Mr. Fisher's right to be free from unlawful searches of his home as described herein was clearly established at the time Defendants Howard, Kay, and Anderson unlawfully entered and searched his home without probable cause, a search warrant, or any reasonable justification, and terrified his infant and toddler daughters.

69.  Defendants Howard, Kay and Anderson unlawfully entered and searched Mr. Fisher's home, while he was detained in a FPD vehicle, with deliberate indifference to his rights under the Fourth Amendment to the U.S. Constitution and Article II § 7 of the Colorado Constitution.

70.  Defendants Howard, Kay, and Anderson each had a duty to intervene and protect Plaintiffs' constitutional rights but failed to do so.

71.  Defendants' unlawful entry and search of Mr. Fisher's home caused Mr. Fisher to experience great trauma and emotional distress as he helplessly watched the Defendant officers enter and search his most sacred space: his home - and while hearing his terrified daughters screaming from inside their home as he remained restrained and detained in the back of an FPD squad car.

72.  As a direct and proximate result of the actions and omissions of Defendants Howard, Kay, and Anderson, Mr. Fisher has suffered damages in an amount in excess of $100,000.00.

### THIRD CLAIM FOR RELIEF
*Failure to Train and Supervise under 42 U.S.C. § 1983; Colo. Rev. Stat. § 13-21-131; and Colo. Const. Art. II, Section 7.*
**(against Defendants City of Fountain and Chief Heberer)**

73.  Plaintiff hereby incorporates all other paragraphs of this Complaint, and the content of any and all exhibits attached hereto, as if fully set forth herein.

15

74.  Municipal bodies are liable for constitutional violations under 42 U.S.C. § 1983 when execution of its official policy or custom deprives an individual of its rights protected under the Constitution.  *See Monell*, 436 U.S. at 694-95.

75.  Such municipal liability exists where a city fails to properly train, supervise, and discipline its employees amounting in a deliberate indifference to one's constitutional rights.  *See City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989).

76.  At all times relevant, Defendant City of Fountain, the FPD, and Defendant Chief Heberer had a duty to properly train, supervise, and discipline their employees.

77.  Defendants breached that duty, in part, by:

   a. Improperly training, authorizing, encouraging or directing officers on proper use of force, seizure of a person in his home, entry and search of a person's home, and detainment.
   b. Failing to investigate allegations of excessive force, improper seizure, improper searches, and improper detainment.
   c.  Failing to discipline officers for violations of policy related to excessive force, improper seizure, improper searches, and improper detainment.

78.  The policy, pattern of practice, or custom of condoned misconduct is tacitly or overtly sanctioned, as evidenced by the conduct of Defendants Howard, Kay, and Anderson, and Defendants City of Fountain and Chief Heberer's failure to train, supervise, investigate, and discipline all of the FPD officers involved in this incident amounting in a deliberate indifference to Plaintiff's constitutional rights.

79.  This unconstitutional behavior of officers is carried out pursuant to a policy, pattern of practice, or custom, whether formal or informal, which violates the constitutional rights of persons situated such as Mr. Fisher.

80.  Defendants City of Fountain and Chief Heberer failed to take sufficient remedial actions to end this policy, pattern of practice, or custom within the FPD.

81.  The condoning of misconduct, and the failure to end this policy, pattern of practice, or custom was a proximate cause to the injuries suffered by Mr. Fisher.

82.  As a direct and proximate cause of the actions of the Defendants, Mr. Fisher has suffered damages in an amount in excess of one hundred thousand dollars ($100,000.00).

**FOURTH CLAIM FOR RELIEF**
*Intentional Torts: Assault, Battery, Intentional Infliction of Emotional Distress, and False Imprisonment*
**(against Defendants Howard and Kay)**

83.  Plaintiff hereby incorporates all other paragraphs of this Complaint, and the content of any and all exhibits attached hereto, as if fully set forth herein.

84.  All of the individual Defendants named in this Complaint are employees of FPD, which is operated by Defendant City of Fountain, a Colorado municipality.

85.  All acts of the individual Defendants alleged above were conducted within the scope of the Defendants' employment or duties.

86.  The actions of the individual Defendants were willful, malicious and in violation of the known rights of Mr. Fisher.

87.  On October 1, 2022, Defendant Howard committed assault and battery upon Mr. Fisher when Howard suddenly and without warning entered Mr. Fisher's home and violently attacked him by grabbing him by the back of his neck and by his arm and forcibly dragged Mr. Fisher out of his home like an animal, without probable cause, a warrant, or any reasonably justifiable basis.

88. Defendant Kay committed assault and battery upon Mr. Fisher when he unlawfully entered Mr. Fisher's home and assisted Defendant Howard with forcibly dragging Mr. Fisher out of his home, without probable cause, a warrant, or any reasonably justifiable basis.

89.  As a result of the violent attack by Defendants Howard and Kay, Mr. Fisher experienced severe bruising, severe pain, and cervical strain – to the point where he could not carry

his own daughters – indicating that Defendants Howard and Kay intentionally exerted great and excessive force with the intention of inflicting severe pain on Mr. Fisher, which they did.

90.  As a result of the excessive force and unlawful seizure of Mr. Fisher inside his own home by Defendants Howard and Kay, whom are both Caucasian, Mr. Fisher, as an African-American, felt utterly violated, degraded, and dehumanized in a way that can only truly be understood by a minority who has experienced such racism and trauma.  Mr. Fisher now fears each day that he could experience similar arbitrary and unjustifiable attacks by the FPD and Defendant individuals in the future.

91.  Without probable cause, a warrant, or any reasonably justifiable basis, Defendants Howard and Kay placed Mr. Fisher in handcuffs and locked him in Kay's FDP squad car.

92.  Defendants Howard and Kay falsely imprisoned Mr. Fisher in Kay's squad car while Defendants Howard, Kay, and Anderson unlawfully searched Mr. Fisher's home. Mr. Fisher's false imprisonment continued for approximately thirty minutes.

93.  At all times, Mr. Fisher knew he was imprisoned by Defendants Howard and Kay.

94.  Defendants' unlawful entry and search of Mr. Fisher's home caused Mr. Fisher to experience great trauma and emotional distress as he helplessly watched the individual Defendant officers enter and search his most sacred space: his home - and while hearing his terrified daughters screaming as he remained restrained and detained in the back of an FPD squad car.

95. Defendants' conduct was intentional and done through the assertion of legal authority over Mr. Fisher.

96. Defendants' extreme and outrageous conduct intentionally or recklessly caused severe emotional distress to Mr. Fisher.

97. As a direct and proximate cause of the actions of Defendants, Mr. Fisher has suffered damages in an amount in excess of $100,000.00.

**FIFTH CLAIM FOR RELIEF**
*Negligence: Negligent Retention, Negligent Supervision,*
*Negligent Infliction of Emotional Distress*
**(against Defendants City of Fountain and Heberer)**

98. Plaintiff hereby incorporates all other paragraphs of this Complaint, and the content of any and all exhibits attached hereto, as if fully set forth herein.

99. All of the individual Defendants named in this Complaint are employees of FPD, which is operated by Defendant City of Fountain, a Colorado municipality.

100. All acts of the individual Defendants alleged above were conducted within the scope of the Defendants' employment or duties.

101. Defendant City of Fountain, the FPD, and Defendant Chief Heberer, owed a duty of care to Mr. Fisher to exercise reasonable care in retaining and supervising the FPD employees.

102. Defendant City of Fountain, the FPD, and Defendant Chief Heberer knew or should have known of Defendant Howard's dangerous character based on prior complaints of excessive force violations and/or background checks including psychological evaluations.

103. Defendant City of Fountain, the FPD, and Defendant Chief Heberer knew or should have known that its officers, and specifically, Defendants Howard, Kay, and Anderson, lacked the proper training or failed to follow the policies regarding (1) forced entry into a person's home, (2) seizure of a person inside their home, and (3) search of the person's entire home, without probable cause, a search warrant, permission, or any reasonable legal justification.

104. Defendants City of Fountain, the FPD, and Defendant Chief Heberer breached their duty of care to Mr. Fisher by failing to properly supervise, provide training, and take remedial

measures, such as discharge or reassignment, against their employees to ensure the safety of Mr. Fisher.

105.  As a result of Defendants' negligent acts, Mr. Fisher reasonably feared for his safety and has suffered and continues to suffer severe emotional distress.

106. As a direct and proximate cause of the actions of Defendants, Mr. Fisher has suffered damages in an amount in excess of $100,000.00

## SIXTH CLAIM FOR RELIEF
### *42 U.S.C. § 1983 – 14th Amendment - Substantive Due Process Violation*
### (against Defendants City of Fountain, Howard and Kay)

107.  Plaintiff hereby incorporates all other paragraphs of this Complaint, and the content of any and all exhibits attached hereto, as if fully set forth herein.

108.  Defendant Howard's and Kay's surprise forced entry into Mr. Fisher's home and violent attack upon Mr. Fisher's barely clothed, unarmed, and African-American person was outrageous and conscious shocking.

109.  Defendant Howard's and Kay's joint subsequent effort to drag Mr. Fisher out of his home and onto his front porch like a wild animal was also outrageous and conscious shocking.

110.  Defendant Howard's audacity in neglecting to inform Mr. Fisher that the welfare check request that evening was approved by a supervisor, given Howard's prior interactions with Mr. Fisher and knowledge that FPD had assured Mr. Fisher that all welfare checks for his oldest daughter would require supervisor approval, was also outrageous and conscious shocking, as *all of the traumatic events that followed that evening could have been completely prevented had Howard simply informed Mr. Fisher that Howard had supervisor approval*.  FPD's records reflect that Mr. Fisher respectfully and cordially complied with all prior FPD welfare checks, so there is

no reason to believe that Mr. Fisher would not have done the same during this occasion, had Howard not omitted this crucial information.

111.   The fact that the Defendant officers did all of this in response to a neighbor's uncorroborated report that Mr. Fisher's children were crying and/or screaming, *yet Defendant Kay's bodycam recording reflects absolutely no sounds of any crying or screaming at any time prior to the Defendant officer's unjustified attack on Mr. Fisher*, was further outrageous and conscious shocking.

112.  The Defendant officers' baseless and needless intrusion into Mr. Fisher's home and violent attack upon him - in the middle of the night when his young daughters were sound asleep - and subsequent search of the entire home while Mr. Fisher was falsely imprisoned in a squad car, in the context of an uncorroborated allegation made by a neighbor with a history of racist animus against Mr. Fisher, was so egregious and extraordinary, and so severe, as to amount to brutal and inhumane abuse of official power.

113. The Defendant officers' openly discussed plan, after inflicting these degrading, humiliating, traumatizing, and dehumanizing atrocities upon Mr. Fisher and all their aftermath, to then charge him with obstruction of a police officer, further solidifies this claim for relief in its entirety.

114. The Defendant officers' behavior in this case was conscience-shocking and will repeat and reverberate both trauma and harm into the Fountain community indefinitely until and unless there is extreme and immediate intervention from this Court and the public.

115.  As a direct and proximate cause of the actions of Defendants, Mr. Fisher has suffered damages in an amount in excess of $100,000.00.

## SEVENTH CLAIM FOR RELIEF
*42 U.S.C. § 1983 – 14th Amendment – Procedural Due Process Violation*
(against Defendants City of Fountain, Howard and Kay)

116.  Plaintiff hereby incorporates all other paragraphs of this Complaint, and the content of any and all exhibits attached hereto, as if fully set forth herein.

117.  Mr. Fisher has a procedural due process right to be free of deprivations of liberty and assaults on his bodily integrity, seizure and search of his person, and searches of his home without due process of law.

118.  This right requires Defendants to provide process to Mr. Fisher before forcibly entering his home, using force to seize and search his person, and searching his entire home while he is detained. Defendant's actions deprived Mr. Fisher of his right to be free from unlawful deprivations of his liberty, bodily integrity, seizure and search of his person, and search of his home without due process of law.

119.  Defendant Howard's and Kay's forcible entry into Mr. Fisher's home and excessive use of force and seizure of Mr. Fisher was a punitive action taken against Mr. Fisher, because Defendant Howard was angry that Mr. Fisher had told him that he needs to get out of his house, that officers Howard and Kay do not have permission to be in his house, and that he is taking care of his children who are sleeping.

120.  Mr. Fisher never consented to the Defendant officer's intrusion into his home but expressly told them that they did not have his permission to enter his home. Defendants Howard and Kay knew that they could not forcibly enter Mr. Fisher's home and seize him without probable cause, a search warrant, or Mr. Fisher's permission, yet Defendants forcibly entered Mr. Fisher's home and seized him anyway, even though they had no lawful basis to do so. This failure to provide notice or process was in violation of Mr. Fisher's constitutional right to due process.

22

121.  At the time of the incidents giving rise to this action, Defendants Howard and Kay knew FPD had enacted a policy that all welfare checks for Mr. Fisher's oldest daughter required supervisor approval, and that Mr. Fisher had been given prior notice of this policy. Yet, the Defendant officers did not even attempt to explain to Mr. Fisher that they had complied with this policy and obtained supervisor approval for the welfare check request that evening, which could have completely prevented the violations of Mr. Fisher's constitutional rights that evening.

122.  The Defendants' policies, customs, and/or practices, as described herein, were the legal and proximate cause of Mr. Fisher's injuries and constitutional violations.

123.  The acts and/or omissions of Defendants were conducted within the scope of their official duties and employment under color of law.

124.  The acts and/or omissions of each Defendant caused Plaintiff's damages in that he suffered physical and mental pain and continues to suffer from the resulting ongoing and continuous psychological injury as well as future damages.

125.  The actions of all Defendants, as described herein, intentionally deprived Plaintiff of the securities, rights, privileges, liberties, and immunities secured by the Constitution of the United States of America and as a direct and proximate cause Mr. Fisher has suffered damages in an amount in excess of $100,000.00.

**EIGHTH CLAIM FOR RELIEF**
*42 U.S.C. § 1983 – 14th Amendment – Equal Protection Violation*
**(against Defendants City of Fountain, Howard and Kay)**

126.  Plaintiff hereby incorporates all other paragraphs of this Complaint, and the content of any and all exhibits attached hereto, as if fully set forth herein.

127.  By their actions, as described herein, Defendants, under color of statute, ordinance, regulation, custom, or usage, subjected Mr. Fisher to the deprivation of the rights, privileges, or immunities secured by the Constitution and law.

128.  Defendants discriminated against the Mr. Fisher, in whole or in part, because of his race as an African-American, denying him equal protection under the law as required under the Fourteenth Amendment to the U.S. Constitution.

129.  Caucasian individuals within the Fountain community have not been subjected to the same abuses that Mr. Fisher was subjected to, as described herein. This difference in treatment was due, in whole or part, to Mr. Fisher's African-American race. Upon information and belief, there is no other documented record where FPD (1) forcibly entered the home of a Caucasian person; (2) then violently attacked and seized the person inside of their home; (3) and then searched the person's entire home while the person was detained in a FPD squad vehicle, without probable cause, a search warrant, permission, or any lawful basis for the above. This indicates that this abusive and illegal treatment was and is reserved solely for racial minorities, such as Mr. Fisher.

130.  The individual Defendant officers' decision to treat racial minorities, including Mr. Fisher, worse than the rest of the general Fountain population is unconstitutional.

131.  The acts or omissions of Defendants were conducted within the scope of their official duties and employment under color of law.

132.  The actions of all Defendants, as described herein, intentionally deprived Mr. Fisher of the securities, rights, privileges, liberties, and immunities secured by the Constitution of the United States of America, and as a direct and proximate cause Mr. Fisher has suffered damages in an amount in excess of $100,000.00.

24

## VI.  DECLARATORY RELIEF

133. This suit involves an actual controversy within the Court's jurisdiction and the Court may declare the rights of Mr. Fisher under the Constitution and laws of the United States and the laws of Colorado and grant such relief as necessary and proper. Mr. Fisher seeks declaratory relief on his behalf.

134. Specifically, Mr. Fisher seeks declaratory judgment that Defendants' policies, pattern of practices, customs, lack of supervision, failure to train, acts, and omissions described herein violate: (1) the Fourth Amendment to the U.S. Constitution (2) the Fourteenth Amendment to the U.S. Constitution, and (3) Article II, Section 7 of the Colorado Constitution,  and constitute excessive force, unlawful seizure, and unlawful search.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Mr. Fisher, respectfully requests that this Court enter judgment in his favor and against the Defendants and grant:

a. Declaratory and injunctive relief, as appropriate;

b. Compensatory and consequential damages, including damages for emotional distress, humiliation, loss of enjoyment of life, loss of liberty, privacy, sense of security and individual dignity, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

c. All economic losses and damages on all claims allowed by law to be established at trial;

d. Punitive and exemplary damages on all claims allowed by law and in an amount to be determined at trial;

e. Issuance of an Order mandating appropriate equitable relief, including, but not limited to:

    i. Issuance of a formal written apology from each Defendant to Plaintiff;

    ii. The imposition of policy changes designed to avoid future similar misconduct by Defendants;

    iii. Mandatory training designed to prevent future similar misconduct by Defendants;

f. Permanently enjoin and prohibit Defendants from interfering with Plaintiffs' constitutional rights. Specifically, to enjoin Defendants from:

    i. Retaliating against Plaintiff for bringing this lawsuit; and

    ii. Subjecting Plaintiff to unlawful seizures and searches of his person, unlawful searches of his home, excessive use of force, and discriminatory treatment in the future.

g. Attorneys' fees and the costs on all claims allowed by law;

h. Pre- and post-judgment interest at the lawful rate;

i. For leave to amend Complaint to include a claim for punitive damages under state law; and

j. Any further relief that this Court deems just and proper, and any other relief as allowed by law.

## VII. REQUEST FOR TRIAL BY JURY

Plaintiff requests a trial to a jury on all issues so triable.

Respectfully submitted this 26th day of May, 2023.

By:    *s/ Taylor G. Minshall*
Taylor G. Minshall, Atty. Reg. #50478
Ethan M. Sumida, Atty. Reg. # 56515
**Attorneys for Plaintiff**
RELEVANT LAW – COLORADO SPRINGS
1311 Interquest Parkway, Suite 110
Colorado Springs, CO 80921
Phone: (719) 960-4396
E-mail: tminshall@relevantlaw.com
E-mail: esumida@relevantlaw.com
Fax Number: (719) 960-4661