IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:23-cv-01398-CNS-MDB

KYLE A. FISHER,

      Plaintiff,

v.

CITY OF FOUNTAIN, a Colorado municipality;
MARCUS HOWARD, Fountain Police Officer, in his individual capacity;
JONATHAN KAY, Fountain Police Officer, in his individual capacity;
BRANDON ANDERSON, Fountain Police Officer, in his individual capacity; and
HEBERER CHRIS, Fountain Police Chief, in his individual capacity,

      Defendants.

---

## ORDER

---

    Before the Court is Defendants' Federal Rule of Civil Procedure 12(b)(6) Motion to

Dismiss. ECF No. 11. For the reasons below, the Court grants the motion.

### I. BACKGROUND[1]

    This action arises from an alleged unreasonable search and seizure incident at

Plaintiff Kyle Fisher's home in the city of Fountain, Colorado. *See generally* ECF No. 1

---

[1] The following facts are drawn from Plaintiff's Complaint and Jury Demand. ECF No. 1. For purposes of this motion, the Court accepts as true, and views in the light most favorable to Plaintiff, all factual allegations contained in the Complaint. *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). The Court also notes that Plaintiff attaches the 911 historical report (Exhibit 1) and the bodycam footage (Exhibit 2) from the incident to his Complaint. In ruling on a motion to dismiss, in addition to the Complaint, the Court "may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002). The Court therefore draws facts from these exhibits as well.

(Compl.). Just before 9:00 p.m. on October 1, 2022, Mr. Fisher's neighbor called 911 to request a welfare check on Mr. Fisher's children after she heard "crying and/or screaming from Mr. Fisher's home." *Id.*, ¶ 23; *see also* ECF No. 1-1 at 58 (911 report, attached to Complaint, noting that the neighbor reported hearing a child "screaming bloody murder").[2] Approximately 10 minutes later, Defendants Marcus Howard and Jonathan Kay of the Fountain Police Department responded to the call and attempted to conduct a child "welfare check." *Id.*, ¶¶ 23–24.

Officer Howard knocked on Mr. Fisher's door upon arrival. *Id.*, ¶ 26. As alleged, Mr. Fisher was "upset" and "visibly frustrated, irritable, and stressed" by the intrusion because he assumed it was another bogus call from his ex-wife, Shaunay Hunter. *Id.*, ¶¶ 27–30.[3] Mr. Fisher, therefore, alleges that he "shut both doors and walked away" into the home. *Id.*, ¶ 30.

Officer Howard then "banged on the glass security door very loudly and yelled for Mr. Fisher" to come back. *Id.*, ¶ 32. Mr. Fisher returned to the door to tell Officer Howard

---

[2] Plaintiff alleged that his neighbor has racial animus against him, but he provides no facts to support this conclusory statement. Compl., ¶ 23. Nor does he allege that Defendants were aware of this alleged racial animus. The Court therefore does not consider this allegation in its analysis.

[3] Mr. Fisher alleges that his frustration stemmed from several spurious welfare checks requested by Ms. Hunter. *See* Compl., ¶¶ 15–22. He alleges that Ms. Hunter abused the welfare-check system at least four times between August 18, 2022, and September 4, 2022, to harass him. *Id.* On two occasions in August, officers from the Fountain Police Department performed welfare checks on their young daughter, with whom they co-parent pursuant to a custody order, and confirmed the daughter's safety. *Id.* On the second occasion, Officer Howard was the responding officer. *Id.* Following this second welfare check, Mr. Fisher requested that supervisor approval be required for any further welfare checks requested by Ms. Hunter. *Id.*; *see also* ECF No. 1-1 at 15. On August 24, 2022, a "supervisor level officer" granted Mr. Fisher's request and entered a caution note in the police department's report system stating that any related welfare check requests *called in by Ms. Hunter* must be approved by a supervisor unless there are extenuating circumstances. Compl., ¶ 20; ECF No. 1-1 at 15. Ms. Hunter requested two additional welfare checks, one on August 27 and another on September 4, but the police did not respond because of the caution note entered in the system. Compl., ¶¶ 21–22.

to stop banging on the door. *Id.* When he did this, the door swung open toward the officers. *Id.*, ¶ 33. As Mr. Fisher reached out to grab the door handle, Officer Howard blocked the door with his body, preventing Mr. Fisher from closing the door. *Id.*, ¶¶ 34–35. Officer Howard told Mr. Fisher that he "needed to see" his daughter. *Id.*, ¶ 36. Mr. Fisher replied that the officers need to get out of his house and that he is "taking care of his children who are sleeping." *Id.*, ¶ 37. He also explained that "he is a single parent" and told the officers that "you all can leave me the f*ck alone." ECF No. 1-2 at 01:35. Officer Howard replied that he "needs to see his [his] baby," to which Mr. Fisher replied, "man, I'm not showing you sh*t." *Id.* at 01:40. Plaintiff then stated, "you gonna get the f*ck out my house, you understand me?" *Id.* at 01:45. The bodycam footage attached to the Complaint shows Mr. Fisher repeatedly pointing his finger at Officer Howard's face and chest. *Id.*

Plaintiff does not allege that the officers told Mr. Fisher who called in the welfare check, but he also does not allege that he asked the officers. Compl., ¶ 28 (Plaintiff alleges that he assumed Ms. Hunter called in the welfare check, and thus he "assumed that Officers Howard and Kay did not have supervisor approval for this welfare check"). In the bodycam footage, Mr. Fisher also had some choice words (which the Court will not repeat here) for "whoever did that shit." ECF No. 1-2 at 01:20.

At this point, Officer Howard reached into the home, "grabbed the back of Mr. Fisher's neck with his right hand" and "Mr. Fisher's right bicep with his left hand" to remove him from the house. Compl., ¶¶ 40–43. Mr. Fisher also alleges that Officer Kay "reached into Mr. Fisher's home" and grabbed his right bicep. *Id.*, ¶ 42. The bodycam footage generally bears this out. *See* ECF No. 1-2 at 2:00.

3

The officers handcuffed Mr. Fisher on his front porch and then detained him in their police vehicle for approximately 30 minutes. Compl., ¶ 43. While he was detained, Officers Howard and Kay, along with Officer Anderson who arrived after the seizure, searched his home without a warrant or consent. *Id.*, ¶ 44. The officers found Mr. Fisher's "young toddler daughter sitting up and crying in bed next to her crying infant sister." *Id.*, ¶ 45. There is no indication that any children in the home were harmed.

After thirty minutes, Mr. Fisher was released and issued a summons and citation for obstructing a police officer. *Id.*, ¶ 46. Five days later, Lt. Gilbertsen from the Fountain Police Department told Mr. Fisher that, following an internal investigation, the obstruction charges against him were dropped. *Id.*, ¶ 53.

Mr. Fisher initiated this action on June 2, 2023, alleging claims under both federal and state constitutional violations for excessive force, unreasonable seizure, unreasonable search, failure to train and supervise, multiple intentional torts, negligence, due process violations, and equal protection violations. He also alleges that he sustained severe emotional distress and neck pain resulting from the incident. *Id.*, ¶¶ 47–49.

## II. LEGAL STANDARD

"To survive a [Federal Rule of Civil Procedure 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Walker v. Mohiuddin*, 947 F.3d 1244, 1248–49 (10th Cir. 2020) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Cummings v. Dean*, 913 F.3d 1227, 1238

(10th Cir. 2019) (internal quotation marks omitted). In making this determination, the "court accepts as true all well pleaded factual allegations in [the] complaint and views those allegations in the light most favorable to the plaintiff." *Straub v. BNSF Ry. Co.*, 909 F.3d 1280, 1287 (10th Cir. 2018). However, "legal conclusions" contained in the complaint are not entitled to the assumption of truth. *See Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). The standard, however, remains a liberal pleading standard, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (quotation omitted).

### III.  ANALYSIS

Defendants move to dismiss claims one, two, three, six, seven, and eight. ECF No. 11 at 3–20. If the Court grants Defendants' request, Defendants then argue that this Court should not exercise supplemental jurisdiction over Plaintiff's remaining state-law claims— claim four (intentional torts) and claim five (negligence). *Id.* at 4.

### A.    Plaintiff Concedes Several Claims

In response to Defendants' motion, Plaintiff expressly abandons that his third, sixth, seventh, and eighth claims. ECF No. 26 at 4 ("Upon further review, Mr. Fisher concedes that his federal law claims for the Third, Sixth, Seventh, and Eighth Claims, as Defendants argue, at this stage do not state plausible claims for relief."). Those claims, therefore, are dismissed without prejudice.

Plaintiff likewise abandons his excessive force claim against Defendant Howard

and the related failure-to-intervene claim against Officer Kay.[4] Defendants clearly addressed these claims in their motion, *see* ECF No. 11 at 5–7, and Plaintiff failed to oppose or otherwise respond to these arguments. The Court finds that Plaintiff has abandoned these claims.[5] *United States v. Hardwell*, 80 F.3d 1471, 1492 (10th Cir.) (holding that a party waived an issue "by failing to make any argument or cite any authority to support his assertion"), *on reh'g in part*, 88 F.3d 897 (10th Cir. 1996).

The Court proceeds to Defendants' arguments with respect to Plaintiff's first two claims.

### B.    Qualified Immunity

Defendants Howard, Kay, and Anderson argue that they are entitled to qualified immunity against Plaintiff's two § 1983 claims—unreasonable seizure (Claim 1) and unreasonable search (Claim 2).

Under the qualified immunity doctrine, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The doctrine "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from

---

[4] Plaintiff included his excessive force and failure-to-intervene claims under his broad "First Claim for Relief - Unreasonable Seizure and Excessive Force Violations under 42 U.S.C. § 1983; Colo. Rev. Stat. § 13-21-131; and Colo. Const. Art. II, Section 7 (against Defendants Howard and Kay)."

[5] Even if the Court did not find that Plaintiff abandoned these claims, he necessarily failed to satisfy his burden of showing that the right was clearly established at the time of Defendants' alleged unlawful conduct. *See Thomas v. Durastanti*, 607 F.3d 655, 669 (10th Cir. 2010) ("The plaintiff bears the burden of citing to us what he thinks constitutes clearly established law.").

harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

When a defendant raises the defense of qualified immunity, a "plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *T.D. v. Patton*, 868 F.3d 1209, 1220 (10th Cir. 2017) (internal quotations omitted). In its discretion, the Court may begin its analysis with either prong. *Cox v. Wilson*, 971 F.3d 1159, 1171 (10th Cir. 2020).

To defeat a qualified immunity challenge under Rule 12(b)(6), a plaintiff "must allege facts sufficient to show (assuming they are true) that the defendants plausibly violated their constitutional rights." *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008). "The record must clearly demonstrate the plaintiff has satisfied his heavy two-part burden; otherwise, the defendants are entitled to qualified immunity." *Felders ex rel. Smedley v. Malcom*, 755 F.3d 870, 877–78 (10th Cir. 2014) (citation and quotations omitted). When a plaintiff fails to satisfy either prong, the Court must grant qualified immunity. *Id.*

### 1.    *Plaintiff's "Unreasonable Seizure" Claim (Claim 1)*

Officers Howard and Kay argue that they are entitled to qualified immunity against Plaintiff's Fourth Amendment unreasonable seizure claim. ECF No. 11 at 4–5, 11–13. As set forth below, the Court agrees.

a.    *"Constitutional Violation" Prong*

Police officers may perform "community caretaking functions" in addition to their typical police roles. *United States v. King*, 990 F.2d 1552, 1560 (10th Cir. 1993); *see also Lundstrom v. Romero*, 616 F.3d 1108 (10th Cir. 2010) (citing *United States v. Garner*, 416 F.3d 1208, 1212 (10th Cir. 2005)). In performing this function, officers "may have occasion to seize a person, as the Supreme Court has defined the term for Fourth Amendment purposes, in order to ensure the safety of the public and/or the individual, regardless of any suspected criminal activity." *King*, 990 F.2d at 1560. It is also well established that police officers are not "required to take unnecessary risks in performing their duties, they are authorized to take such steps as [are] reasonably necessary to protect their personal safety and to maintain the status quo during the course of [a *Terry*] stop." *United States v. Neff*, 300 F.3d 1217, 1220 (10th Cir. 2002) (alterations in original).

The Court finds *Lundstrom*, a case both parties cite, instructive. The dispute in *Lundstrom* arose from a confrontation at the plaintiff's home during a child welfare check by the Albuquerque Police Department. *Lundstrom*, 616 F.3d at 1115. Officers responded to a 911 call from a neighbor who heard, but did not see, a woman in the backyard of Lundstrom's home slapping a crying child. *Id.* at 1115–16. Approximately 40 minutes after the call, Officer Romero arrived at Lundstrom's home. *Id.* at 1115. She identified herself and explained to Lundstrom that she was there to check on a child's welfare. *Id.* at 1116. Lundstrom's girlfriend, Plaintiff Jane Hibner, was also at the house. According to Officer Romero, Lundstrom became hostile, shouted "there [are] no f* * *ing kids here," and

slammed the front door shut. *Id.* (alterations in original). The record also reflected that Hibner walked out of the house but remained near the front lawn. *Id.*

Lundstrom testified at a hearing that he was suspicious Officer Romero was not an actual police officer and that her uniform and badge were fake. *Id.* Lundstrom therefore barricaded himself inside his home and called 911 to confirm Officer Romero's identity. *Id.* At some point, four additional officers arrived on scene, including one dispatched in response to Lundstrom's request for a second officer. *Id.* One of those officers called dispatch and requested that the information reported by the neighbor be verified. *Id.* The phone record between dispatch and the neighbor indicates that the neighbor, who was a retired police officer, conceded that the officers had the "wrong address."

> DISPATCH: Okay. *There is no child there at [Lundstrom's residence].* It's two adults. It's a male and a female. So I need to know what you heard . . . .
>
> NEIGHBOR: Well, *then it's the wrong address*, because this was an infant and a female adult. But they only have that baby some of the time.
>
> DISPATCH: So, you're saying there was a small child there?
>
> NEIGHBOR: Yes.

*Id.* at 1117 (emphasis added).

Lundstrom eventually came out of his house with his hands up. *Id.* at 1117. The officers handcuffed him and patted him down while officers pointed their service weapons at him. *Id.* at 1118. The officers also handcuffed Hibner. *Id.* Lundstrom was placed in the

back of the police cruiser for 30 to 45 minutes while the officers searched his home. No child was found, and Lundstrom and Hibner were free to go. *Id.*

Lundstrom and Hibner filed suit under § 1983 following the police encounter. The district court determined qualified immunity shielded the officers, but the Tenth Circuit found that the plaintiffs sufficiently alleged facts to demonstrate that the officers violated their clearly established constitutional rights. *Id.* at 1115.

As relevant to this case, the *Lundstrom* court recognized that police officers may exercise a "community caretaking function," which, in certain circumstances, may permit officers to briefly detain a person. *Id.* at 1120 (citing *Garner*, 416 F.3d at 1212–13). "Like an investigative detention, . . . a community caretaking detention must be based upon specific and articulable facts which reasonably warrant an intrusion into the individual's liberty." *Id.* (quoting *Garner*, 416 F.3d at 1212 (internal punctuation and quotation marks omitted)). Moreover, community caretaking detention must be limited in scope and last no longer than necessary. *Id.* at 1120–21.

The Tenth Circuit concluded that the officers did not "have a reasonable basis for believing Lundstrom posed an immediate threat to them, himself, . . . or anyone else" and thus violated his constitutional right to be free from unreasonable seizure. *Id.* at 1124–25. Several critical factors guided the court's decision. First, the neighbor reporting hearing a woman—not a man—disciplining a child. *Id.* at 1124. And because the only woman that was in the home when Officer Romero arrived—Hibner—was no longer in the home, Hibner could not pose an immediate threat to anyone inside. *Id.* Second, Lundstrom told the officers that there was not a child in the house, and relatedly, there was no indication

to the officers "suggesting a child's presence at the house." *Id.* And third, the neighbor "backtracked about her initial story and the location of the incident." *Id.* Based on the totality of the circumstances, the officers lacked a reasonable basis to seize Lundstrom.

The *Lundstrom* court also considered whether exigent circumstances existed which would justify Lundstrom's seizure. *Id.* at 1124. "Exigent circumstances may justify a search or seizure at a home without a warrant, or probable cause, where the need exists to assist persons who are seriously injured or threatened with such injury." *Id.* (citing *Armijo ex rel. Armijo Sanchez v. Peterson*, 601 F.3d 1065, 1073 (10th Cir. 2010)). The test for determining whether exigent circumstances justified a seizure is "(1) whether the officer had an objectively reasonable basis to believe there was an immediate need to protect the lives or safety of himself or others; and (2) whether the manner and scope of the search or seizure was reasonable." *Id.* (citing *United States v. Najar,* 451 F.3d 710, 717 (10th Cir. 2006). The test can be boiled down to "whether the officers were confronted with reasonable grounds to believe there was an immediate need guided by the realities of the situation presented by the record from the viewpoint of prudent, cautious, and trained officers." *Id.* (quoting *Najar*, 451 F.3d at 718–19 (internal quotation marks omitted)).

The court reviewed the record from the "viewpoint of a 'prudent, cautious, and trained' officer" and found that no exigent circumstances existed to support Lundstrom's seizure. *Id.* (quoting *Najar*, 451 F.3d at 718–19). The court relied heavily on the fact that the officers had no grounds to believe a child was in the home, meaning that Lundstrom or Hibner could not have posed an immediate threat to anyone. *Id.* But critically, the Tenth

Circuit stated that the court "*might have reached a different conclusion if the record contained some indication of a child's presence*." *Id.* at 1125 (emphasis added).

Here, the Court finds that Plaintiff has failed to allege a constitutional violation. Officers Howard and Kay had specific and articulable facts to reasonably believe that a child may be in danger. First, Plaintiff's neighbor called 911 to report hearing a child scream "bloody murder." ECF No. 1-1 at 58. Second, Plaintiff attempted to retreat into his home after the officers asked to perform a child welfare check. Compl., ¶ 30; ECF No. 1-2 at 01:00–02:00. Third, the bodycam video clearly shows Plaintiff's aggressive and combative behavior toward the officers when they asked to see his children. ECF No. 1-2 at 01:30–02:30. He repeatedly waived his hand in Officer Howard's face while yelling at him to leave. *See id.* Clearly the officers were trying to access the situation, and Plaintiff's aggressive behavior left the officers with little choice but to restrain him. Plaintiff's aggressive behavior continued all the way to the police car. *See id.* And fourth, given his demeanor, Defendants were authorized to take necessary steps to protect their own safety. *Neff*, 300 F.3d at 1220. As alleged, the detention was limited in scope and did not last longer than necessary. *Id.* Additionally, for these same reasons (and as explained in more detail below with regard to Plaintiff's unreasonable search claim), the Court finds that Defendants have sufficiently shown that exigent circumstances justified the limited seizure.

In short, given the information before them, the Court cannot say that the actions of Officers Howard or Kay were unreasonable—let alone unconstitutional. Plaintiff has failed to plead a constitutional violation in his first claim for relief.

      b.      *"Clearly Established" Prong*

Even if the Court found a constitutional violation with respect to claim one, Plaintiff cannot show that the law was clearly established.

A public official's conduct violates clearly established law when, at the time of the challenged conduct, "the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (cleaned up). "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). A right is clearly established "when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as the plaintiff maintains." *Thomas v. Kraven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (quoting *PJ ex rel. Jensen v. Wagner*, 603 F.3d 1182, 1196–97 (10th Cir. 2010)).

It is the plaintiff's heavy burden to demonstrate that the right was clearly established at the time of the challenged conduct. *Surat v. Klamser*, 52 F.4th 1261, 1270 (10th Cir. 2022) (quotation omitted); *Thomas v. Durastanti*, 607 F.3d 655, 669 (10th Cir. 2010) ("The plaintiff bears the burden of citing to us what he thinks constitutes clearly established law."). While the plaintiff need not cite a case directly on point or with "identical facts," the plaintiff still must show that the law would have informed a reasonable officer in the defendant's position that his conduct was unlawful in that situation. *See Kapinski v. City of Albuquerque*, 964 F.3d 900, 910 (10th Cir. 2020); *Knopf v. Williams*, 884 F.3d 939,

949 (10th Cir. 2018) (citation omitted). That is, the clearly established law must place the constitutional issue "beyond debate." *Mullenix*, 577 U.S. at 16 (quotation omitted).

Here, Plaintiff appears to rely solely on *Lundstrom*, which he believes constitutes clearly established law concerning his unreasonable seizure claim. *See* ECF No. 26 at 13–15. As outlined above, the facts of *Lundstrom* are strikingly similar to the instant case except for *at least* one crucial difference: the undisputed existence of Plaintiff's children inside his home. It is abundantly clear to this Court that *Lundstrom* relied heavily on the fact that no child was in Lundstrom's home at the time of the seizure. *Id.* at 1123, 1124, 1125, 1128. Because of this critical distinction, the law simply cannot be clearly established with respect to the particular circumstances of this case; indeed, the Tenth Circuit itself said that it may have reached a different conclusion had a child been present in the home. *Id.* at 1125.

Despite his clear burden, *see Thomas*, 607 F.3d at 669 ("The plaintiff bears the burden of citing to us what he thinks constitutes clearly established law."), Plaintiff does not cite any case which he contends is on point. Rather, he spends two pages distinguishing *Lundstrom* in response to Defendants' motion, arguing that the "presence of a child within the home is a distinction without a difference," and "*Lundholm* makes the contours of Mr. Fisher's Fourth Amendment right sufficiently clear and places the constitutional question beyond debate." ECF No. 26 at 16–17. For the reasons already explained, the Court disagrees.

Plaintiff also appears to argue that Defendants' actions were so "obviously unlawful" that it is unlikely that there would be a case on point. *See id.* at 15 (quoting *Lowe*

*v. Raemisch*, 864 F.3d 1205, 1210 (10th Cir. 2017) for the proposition that "some things are so obviously unlawful that they don't require detailed explanation[,] and sometimes the most obviously unlawful things happen so rarely that a case on point is itself an unusual thing"). The Court is not persuaded by this argument. The Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality." *al-Kidd*, 563 U.S. at 742 (collecting cases). "The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established." *Id.* Still, even if it is dicta, the *Lundstrom* court noted that it might have reached a different holding if a child was in the house. It simply cannot be said that Defendants' detention of Plaintiff was "obviously unlawful."

* * *

Plaintiff has not met his burden to overcome Defendants' defense of qualified immunity as to his unreasonable seizure claim, and therefore, the Court will dismiss Plaintiff's first claim with prejudice. *Clark v. Wilson*, 625 F.3d 686, 690 (10th Cir. 2010 (dismissal based on qualified immunity should be with prejudice); *Lybrook v. Members of Farmington Mun. Sch. Bd. of Educ.*, 232 F.3d 1334, 1342 (10th Cir. 2000) (same).

### 2.    Plaintiff's "Unreasonable Search" Claim (Claim 2)

Officers Howard, Kay, and Anderson argue that they are entitled to qualified immunity against Plaintiff's Fourth Amendment unreasonable search claim. ECF No. 11 at 4–5, 11–13. As set forth below, the Court agrees.

a.   *"Constitutional Violation" Prong*

Warrantless searches of homes are presumptively unreasonable. *Lundstrom*, 616 F.3d at 1128 (citing *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006)). "Warrants are generally required to search a person's home or his person unless the exigencies of the situation make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." *Armijo*, 601 F.3d at 1070 (internal alteration and quotation marks omitted). "A threat to the safety of a minor child within a home constitutes an exigent circumstance under at least some circumstances." *Smith v. City of Wyoming*, 821 F.3d 697, 710 (6th Cir. 2016) (citing *Brigham City*, 547 U.S. at 403); *see also Caniglia v. Strom*, 593 U.S. 194, 198 (2021) ("We have also held that law enforcement officers may enter private property without a warrant when certain exigent circumstances exist, including the need to 'render emergency assistance to an injured occupant or to protect an occupant from imminent injury.'" (quoting *Kentucky v. King*, 563 U.S. 452, 460 (2011))).

In this case, the Court analyzes two competing burdens: Defendants' burden of showing exigent circumstances existed to justify their warrantless entry of Plaintiff's home, *Najar,* 451 F.3d at 717, with Plaintiff's burden of showing that Defendants' conduct violated the Fourth Amendment, and if so, citing to the Court what he thinks constitutes clearly established law. *Thomas v. Durastanti*, 607 F.3d 655, 669 (10th Cir. 2010).

Beginning with Defendants' burden, they argue that the facts alleged in the Complaint along with the attached exhibits show that exigent circumstances did support the officers' entry and limited search of Plaintiff's home. ECF No. 28 at 5–7. Specifically,

16

they point to three pieces of information: (1) the "verifiable third-party complaint" from the neighbor of a "child screaming bloody murder"; (2) Plaintiff's "verbally and physically combative behavior" when the officers told Plaintiff they needed to perform a child welfare check; and (3) Plaintiff's attempt to retreat inside his home. *Id.* at 6. Taken together, this information is sufficient for a "prudent, cautious, and trained" officer to conclude that there was a possibility that children in the home may be injured or at risk of imminent injury. *Najar*, 451 F.3d at 718–19. The Court finds that Defendants have satisfied their burden of showing exigent circumstances justified the limited search to confirm the safety of the children.[6]

Turning to Plaintiff's burden, he merely argues that Defendants have failed to meet their burden of showing exigent circumstances existed. ECF No. 26 at 8–11. Relatedly, Plaintiff also argues that Defendants should not have relied on his neighbor's tip, especially when Defendants could not hear any children screaming when they arrived at Plaintiff's home. *Id.* at 11. The Court is not persuaded. For the reasons enumerated above, reasonable officers confronted with the same situation could have concluded that a child in the home was injured or at risk of imminent injury. Contrary to Plaintiff's position, the lack of a screaming child does not prove the absence of an injured child.

Plaintiff has failed to plead a constitutional violation in his second claim for relief.

---

[6] The fact that Plaintiff's children apparently were unharmed does not alter the Court's analysis. The "Fourth Amendment evaluates reasonableness based upon what the officers reasonably believed at the time. It does not matter that, in retrospect, information provided to the officers was wrong." *Armijo*, 601 F.3d at 1072.

b.      *"Clearly Established" Prong*

Even if the Court found a constitutional violation, Plaintiff cannot satisfy the second prong of qualified immunity. Plaintiff again relies exclusively on *Lundstrom* to argue that the law was clearly established at the time of Defendants' alleged unlawful search. ECF No. 26 at 15. *Lundstrom*, however, would not inform reasonable officers in Defendants' position that their actions were inconsistent with clearly established law. Although *Lundstrom* found that there were no exigent circumstances present in that case to justify the warrantless search, the analysis turned on facts not present in this case. For example, the court noted that, by the time of the search,

> both Lundstrom and Hibner had been handcuffed and positioned away from the house, *Lundstrom had told the officers no child was at the residence*, and *the neighbor had indicated she might have reported the wrong address*. Further, the *officers still had not come across anything evidencing the presence of a child*. The record does not indicate the officers encountered anything suggesting *someone inside Lundstrom's house was in immediate danger or seriously injured*.

*Lundstrom*, 616 F.3d at 1128 (emphasis added). Additionally, although Lundstrom was initially combative when he questioned whether Officer Romero was actually a police officer, he eventually came out of his house with his hands up and in full view of the officers. *Lundstrom*, 616 F.3d at 1127.

But here, Plaintiff admitted there were children in the house, and Plaintiff did not allege that his neighbor altered her report. Moreover, the Court has reviewed the

bodycam footage attached to the Complaint, which shows Plaintiff's combative behavior toward the officers.[7]

The Court cannot say that *Lundstrom* put the constitutionality of Defendants' actions "beyond debate." *Mullenix*, 577 U.S. at 16 (quotation omitted). And because Plaintiff points the Court to no other case he thinks constitutes clearly established law, he again has failed to satisfy his burden.

Finally, Plaintiff appears to argue that "ample case law on searches of the home has provided consistent and obvious affirmation" that warrantless searches are unlawful. ECF No. 26 at 15. Plaintiff's attempt to cast a wide net without citing any specific cases must be rejected. *See al-Kidd*, 563 U.S. at 742; *Quinn v. Young*, 780 F.3d 998, 1009 (10th Cir. 2015) (high-level Fourth Amendment principles are generally unhelpful for clearly established analysis) (collecting caselaw).

\* \* \*

Because Plaintiff has not satisfied his heavy two-part burden, the Court must dismiss this claim with prejudice. *See Clark*, 625 F.3d at 690.

### C. Dismissal of state law claims

Defendants argue that the Court should decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. ECF No. 11 at 20. Plaintiff did not respond to Defendants' argument. *See generally* ECF No. 26.

---

[7] In his response, Plaintiff argues that the video does not reveal combative behavior. ECF No. 26 at 10. The Court cannot agree. No reasonable person could conclude that his behavior was anything but combative. *See Scott v. Harris*, 550 U.S 372, 378–80 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."); *Bryner v. Utah*, 429 F. App'x 739, 746 (10th Cir. 2011) (unpublished) (applying this standard to a motion to dismiss).

When a district court dismisses all federal claims, in its discretion, "the court may, *and usually should*, decline to exercise jurisdiction over any remaining state claims." *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998) (emphasis added); *see also* 28 U.S.C. § 1367(c)(3). Because the Court is dismissing the federal claims (including the claims Plaintiff expressly abandons), and because Plaintiff failed to offer any argument in opposition to Defendants' request, the Court will decline to exercise supplemental jurisdiction of the state law claims.[8]

Accordingly, Plaintiff's fourth and fifth claims for relief are dismissed without prejudice.

## IV. CONCLUSION

Consistent with the foregoing analysis, Defendants' Rule 12(b)(6) Motion to Dismiss, ECF No. 11, is GRANTED. Accordingly,

(1)    Claims One and Two are DISMISSED WITH PREJUDICE under the doctrine of qualified immunity;

(2)    Because Plaintiff expressly abandons Claims Three, Six, Seven, and Eight, these claims are DISMISSED WITHOUT PREJUDICE;

(3)    Having declined to exercise supplemental jurisdiction over Plaintiff's state law claims, Claims Four and Five are DISMISSED WITHOUT PREJUDICE.

(4)    The Clerk of Court is directed to close this case.

---

[8] The Court notes that discovery is stayed in this matter. *See* ECF No. 20 (granting Defendants *unopposed* motion to stay discovery pending resolution of Defendants' motion to dismiss). Accordingly, the case is in its infancy and dismissing Plaintiff's state law claims without prejudice will have minimal disruption to Plaintiff's case.

DATED this 28th day of March 2024.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge